# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STELLA DEHNOUSHI,** | : | |
| **Individually  and as representative,** | : | |
| **of the Estate of** | : | |
| **ROBERT DEHNOUSHI and as** | : | |
| **Natural guardian of minor child** | : | |
| **C.D** | : | |
| **c/o JDKatz Attorneys at Law** | : | |
| **4800 Montgomery Ln, Ste 600** | : | |
| **Bethesda, MD 20814** | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | **Civil Action No. _____** |
| | : | |
| | : | |
| **v.** | : | |
| **THE ISLAMIC REPUBLIC OF** | : | |
| **IRAN,THE ISLAMIC** | : | |
| **REVOLUTIONARY GUARD** | : | |
| **CORPS, THE MINISTRY OF** | : | |
| **INTELLIGENCE AND SECURITY** | : | |
| **OF THE ISLAMIC REPUBLIC OF** | : | |
| **IRAN; DOES 1-50** | : | |
| **c/o Ministry of Foreign Affairs** | : | |
| **Khomeni Avenue, United Nations** | : | |
| **Street Tehran, Iran** | : | |
| **Defendants.** | : | |

## COMPLAINT

## INTRODUCTION

1. This action is brought by Plaintiff STELLA DEHNOUSHI, individually, as
   representative of the Estate of ROBERT DEHNOUSHI, and as natural guardian of
   minor child C.D. (collectively, "Plaintiffs"), against Defendants Islamic Republic of
   Iran ("Iran"), the Islamic Revolutionary Guard Corps ("IRGC"), the Ministry of
   Intelligence and Security of the Islamic Republic of Iran ("MOIS"), and DOES 1-50
   (collectively, "Defendants") for damages arising from acts of extrajudicial killing,
   terrorism, and continuing threats and intimidation.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1330, 28 U.S.C. § 1331, 28 U.S.C. § 1332, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 note, the Justice Against Sponsors of Terrorism Act ("JASTA"), and the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333.

3. Plaintiffs bring this action to seek redress for the targeted assassination of Robert Dehnoushi, a United States citizen, on August 15, 2024, in Glendale, California, and for the ongoing campaign of terror, intimidation, and harassment directed at his surviving family members.

4. Defendants' acts were intended to intimidate and coerce Robert Dehnoushi and his family, to retaliate against them for their anti-regime activities and expressions, and to silence criticism of the Islamic Republic regime.

5. The actions of Defendants constitute grave breaches of international law, violations of fundamental human rights, and acts of international terrorism as defined by United States and international law.

## PARTIES

6. Plaintiff Stella Dehnoushi is a United States citizen residing in Los Angeles, California. She brings this action individually, as the representative of the Estate of Robert Dehnoushi, and as the natural guardian of their minor child, C.D., who is also a United States citizen.

7. Robert Dehnoushi was a United States citizen of Iranian Armenian descent, residing in Los Angeles, California until his assassination on August 15, 2024. He was the husband of Plaintiff Stella Dehnoushi and father of minor child C.D.

8. Robert Dehnoushi was a prominent music manager and activist who worked with well-known Iranian singer Googoosh, organizing concerts worldwide that often included

expressions of opposition to the Islamic Republic of Iran and support for human rights in Iran.

9.  Plaintiffs have standing to bring this action as victims of terrorism and as close family members of a victim of extrajudicial killing. Plaintiffs have suffered direct injury and severe emotional distress as a result of Defendants' actions.

10. Defendant, the Government of the Islamic Republic of Iran ("Iran"), is a foreign sovereign designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App §2405(j)), Section 40 of the Arms Export Control Act (22 U.S.C. §2780), and Section 620A of the Foreign Assistance Act (22 U.S.C. § 2371). The Government of the Islamic Republic of Iran was designated a state sponsor of terrorism by the U.S. Secretary of State on January 19, 1984. See 49 Fed. Reg. 2836 (Jan. 23, 1984). The designation was in place both at the time of the events that gave rise to the issues in this Complaint and at the time this Complaint was filed. Iran provides material support and resources to the IRGC, MOIS, and various terrorist organizations and proxies throughout the world.

11. Defendant Islamic Revolutionary Guard Corps ("IRGC") is the military organization established by Ayatollah Khomeini after the 1979 Iranian Revolution. The IRGC is an agency or instrumentality of Iran within the meaning of 28 U.S.C. § 1603(b) and is controlled by the Iranian government. On April 8, 2019, the United States designated the IRGC as a Foreign Terrorist Organization. The IRGC has engaged in terrorist activity and terrorism, including the acts described herein.

12. Defendant Ministry of Intelligence and Security of the Islamic Republic of Iran ("MOIS") is the primary intelligence organization of the Islamic Republic of Iran. MOIS is an agency or instrumentality of Iran within the meaning of 28 U.S.C. § 1603(b) and is

controlled by the Iranian government. MOIS agents and operatives have engaged in acts of terrorism, including the acts described herein.

13. Pursuant to the test established by the United States Court of Appeals for the D.C. Circuit, the Revolutionary Guard and MOIS must be treated as the State of Iran itself as that term is used in 28 U.S.C. §1608 of the Foreign Sovereign Immunities Act. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 149--50 (D.C. Cir. 1994)).

14. Defendants DOES 1-20 are individuals who, at all relevant times, were officials, employees, agents, or operatives of Iran, the IRGC, or MOIS who participated in, ordered, authorized, or had knowledge of the acts described herein but whose identities are currently unknown to Plaintiffs.

15. Defendants DOES 21-50 are individuals who, at all relevant times, acted as agents of Iran, the IRGC, or MOIS in carrying out the assassination of Robert Dehnoushi and the continued surveillance, harassment, intimidation, and threats against Plaintiffs, as described herein, but whose identities are currently unknown to Plaintiffs.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331, and 1605A. This suit falls within the "terrorism exception" to sovereign immunity under the FSIA, 28 U.S.C. § 1605A(a)(1), as it seeks money damages against a foreign state for personal injury and death caused by acts of torture, extrajudicial killing, and hostage taking engaged in by officials, employees, or agents of Iran while acting within the scope of their office, employment, or agency.

17. The acts alleged herein were perpetrated by officials, members, and agents of the IRGC and other agents and instrumentalities of Iran within their official capacities. Robert Dehnoushi was a U.S. citizen and national at the time of his assassination, and his

surviving family members bringing this action are also U.S. citizens. Iran has been designated a "state sponsor of terrorism" by the Secretary of State since January 19, 1984.

18. This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1330(b), and venue is proper pursuant to 28 U.S.C. § 1391(f)(4), as this is a civil action against a foreign state. This suit seeks money damages against Iran and its agencies and instrumentalities for injury and harm caused to the Plaintiffs by acts of terrorism, extrajudicial killing, and other torts against Plaintiffs.

19. These acts of terrorism and extrajudicial killing were perpetrated by officials, members, and agents of the IRGC and other agents and instrumentalities of Iran while acting within the scope of their official capacities.

20. Plaintiffs are U.S. citizens and nationals of the United States within the meaning of the FSIA and were such at the time of the acts alleged herein.

21. Defendant Iran has been designated a "state sponsor of terrorism" by the Secretary of State since January 19, 1984.

22. Defendants are not immune from the jurisdiction of this Court under the FSIA, 28 U.S.C. § 1605A, because this action seeks money damages against a foreign state for personal injury and death caused by acts of extrajudicial killing and the provision of material support or resources for such acts, which were engaged in by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

23. Additionally, Defendants are not immune under the FSIA's terrorism exception because Iran has been designated as a state sponsor of terrorism, and Robert Dehnoushi was, at the time of his assassination, a national of the United States.

## STATEMENT OF FACTS

### I. Background and Professional Activities

24. Robert Dehnoushi was a United States citizen of Iranian Armenian descent residing in Los Angeles, California. He was married to Stella Dehnoushi, also a United States citizen, and they had two children, both born in the United States.

25. Robert Dehnoushi was the manager of Googoosh, a renowned Iranian American artist who is widely considered the most famous living singer from Iran. Googoosh herself had been detained by the Islamic Republic and subsequently fled Iran to continue her career abroad.

26. For over ten years preceding his death, Robert Dehnoushi and Googoosh had been organizing concerts worldwide that prominently featured anti-Islamic Republic of Iran messages and expressions.

27. These concerts were held in numerous international locations, including multiple cities in Germany (Hamburg, Berlin, Frankfurt, Munich, Düsseldorf, Hanover, and Stuttgart), as well as London, Paris, Los Angeles, New York, Washington DC, Canada, Australia, and other locations around the world.

28. Robert Dehnoushi organized and managed all of these concerts, which numbered approximately 20 per year.

29. The concerts managed by Robert Dehnoushi frequently began with the playing of the pre-revolutionary Iranian national anthem (from the Shah's era), a direct challenge to the legitimacy of the current Islamic Republic.

30. These performances also regularly featured visual displays and references to Mahsa Amini, whose death in custody of Iran's morality police in 2022 sparked widespread protests in Iran and internationally.

31. During these concerts, Googoosh often performed songs with political messages critical of the Iranian regime, wore black in remembrance of those killed by the regime, and the audience would frequently chant anti-regime slogans, including "Death to Khamenei" (referring to Iran's Supreme Leader).

32. Audience members commonly displayed posters of Mahsa Amini and signs with the slogan "Zan, Zindagi, Azadi" (Woman, Life, Freedom), which became the rallying cry of the anti-regime protests following Amini's death.

33. In addition to managing these concerts, Robert Dehnoushi was actively involved in anti-regime organizations and demonstrations, making him a visible target for the Iranian regime.

34. Just one month before Robert Dehnoushi's assassination, Googoosh collaborated with famous English singer Ed Sheeran on a song that received widespread international attention, further raising the profile of their anti-regime activities.

35. Being of Iranian Armenian background, Robert Dehnoushi was particularly sensitive to the targeting and victimization of religious minorities such as Jews, Armenians, and Bahais by the Islamic Republic, and was committed to raising awareness about these human rights abuses.

**II. Pattern of Iranian Government Targeting of Dissidents and Cultural Figures**

36. The assassination of Robert Dehnoushi follows a documented pattern of the Iranian regime targeting dissidents, critics, and cultural figures who oppose the Islamic Republic, both within and outside Iran's borders. In testimony before the Senate Committee on Homeland Security and Governmental Affairs in November 2023, FBI Director Christopher Wray explicitly stated that the regime in Iran has "mounted assassination attempts against dissidents and high-ranking current and former US government officials" on American soil, using both direct operatives and criminal associates hired specifically

for these purposes. *See* Iran Has Tried to Kill American Officials On US Soil, FBI Says, IRAN INT'L (Nov. 2, 2023), https://www.iranintl.com/en/202311026704.

37. The U.S. Department of Justice has publicly characterized the Iranian government's campaign to target critics on American soil as "persistent" and "brazen." In an interview with NBC News in August 2024, Attorney General Merrick Garland specifically stated regarding Iranian assassination plots: "They are brazen about this and they are persistent about this... I don't think we've seen the end of Iranian plotting." Ken Dilanian, *Why does Iran keep sending amateurs to conduct assassinations in the U.S.?*, NBC NEWS (Aug. 12, 2024), https://www.nbcnews.com/investigations/iran-keep-sending-amateurs-assassinations-us-soil-rcna165860.

38. According to the U.S. Department of Treasury, which designated several Iranian operatives for sanctions in June 2023, the Islamic Revolutionary Guard Corps (IRGC) and its Quds Force have "engaged in numerous assassination attempts and other acts of violence and intimidation against those they deem enemies of the Iranian regime." These official designations confirm the Iranian regime's use of extraterritorial violence as state policy. Press Release, U.S. Dep't of Treasury, Treasury Designates Iranian Regime Operatives Involved in Assassination Plots in the United States and Abroad (June 1, 2023), https://home.treasury.gov/news/press-releases/jy1513.

39. A study published by the Combating Terrorism Center at West Point in February 2022 documented 98 Iranian plots between 1979 and 2021 targeting dissidents, activists, and critics abroad. This study noted that "Iran has conducted external operations around the world, including in countries with advanced law enforcement, border security, and intelligence services," demonstrating its willingness to violate the sovereignty of other nations, including the United States. Matthew Levitt, *Trends in Iranian External Assassination, Surveillance, and Abduction Plots*, COMBATING TERRORISM CTR.

AT WEST POINT (Feb. 24, 2022), https://ctc.westpoint.edu/trends-in-iranian-external-assassination-surveillance-and-abduction-plots/.

40. In January 2023, FBI Director Christopher Wray stated in a press conference announcing charges in another Iranian-directed assassination plot: "The conduct charged shows how far Iranian actors are willing to go to silence critics, even attempting to assassinate a U.S. citizen on American soil." This statement demonstrates the U.S. government's official recognition of Iran's pattern of targeting critics through assassination, which directly parallels the targeting of Robert Dehnoushi. Press Release, U.S. Dep't of Justice, U.S. Attorney Announces Charges And New Arrest In Connection With Assassination Plot Directed From Iran (Jan. 27, 2023), https://www.justice.gov/usao-sdny/pr/us-attorney-announces-charges-and-new-arrest-connection-assassination-plot-directed.

41. The targeting of cultural figures like Robert Dehnoushi is consistent with the Iranian regime's documented pattern of focusing on individuals who challenge the regime's cultural and religious narratives. For example, in 2022, the FBI disrupted a plot against Iranian-American journalist and women's rights activist Masih Alinejad in Brooklyn, New York, who, like Robert Dehnoushi, was involved in promoting content critical of the Iranian regime's treatment of women and religious minorities. Lesley Stahl, *Iranian dissidents say they face intimidation, abductions, assassination attempts around the world*, CBS NEWS (June 9, 2024), https://www.cbsnews.com/amp/news/iranian-dissidents-abductions-assassination-attemts-60-minutes-transcript/.

42. The U.S. government has officially determined that the Iranian regime specifically targets individuals based on their religious and ethnic background. This pattern is consistent with the threats against Robert Dehnoushi that explicitly referenced his Christian Armenian identity, with attackers stating they would not allow a "Fucking Christian, Dog Armenian promote anti-Islam shows and protests on stage." *See*

Statement of Ray Mirzabegian, Brother-in-law of Robert Dehnoushi (Apr. 2025) (on file with counsel).

43. The FBI and other U.S. intelligence agencies have reported that Iran's efforts to target dissidents abroad have become "more frequent and bolder" in recent years. This escalation coincides with the timing of the threats and ultimate assassination of Robert Dehnoushi, who had increased his anti-regime activities during this same period. Lesley Stahl, *Iranian dissidents say they face intimidation, abductions, assassination attempts around the world*, CBS NEWS (June 9, 2024), https://www.cbsnews.com/amp/news/iranian-dissidents-abductions-assassination-attemts-60-minutes-transcript/.

### III. Personal Knowledge of Threats Against Robert Dehnoushi

44. In the weeks and months preceding his assassination, Robert Dehnoushi confided to his brother-in-law, Ray Mirzabegian, his serious concerns about threats to his life. During multiple private conversations while commuting to work in Barstow and during a family getaway to Palm Springs on June 15, 2024, Robert explicitly stated that he was being threatened and feared for his safety. Most significantly, on August 1, 2024—exactly two weeks before his assassination—Robert specifically requested that Ray Mirzabegian "protect and support his family" if anything happened to him, stating "he has a feeling something bad is going to happen to him" and emphasizing that "he just wants me to please watch after his kids and family if something happened to him."

45. Robert Dehnoushi detailed to Ray Mirzabegian specific confrontations that had occurred during Googoosh's latest tour, where individuals representing the Islamic Republic of Iran had attempted to shut down the events. Robert disclosed that he had received "serious threats by different individuals, who told him that they will make sure that he pays for his actions" and that "the threats were from the Iranian regime" who "told him

the Islamic republic considers him an enemy of Islam and a threat to the regime." When Robert refused their demands and physically confronted these individuals, he reported that he had defiantly told them to "go fuck themselves," explicitly stated "Fuck Khamenei" and "Fuck the Islamic Republic," and proceeded with the concerts, which included thousands of attendees chanting anti-regime slogans.

46. During one specific incident, Robert disclosed to Ray Mirzabegian that he was approached by a heavyset bearded man wearing black who became physical with him and threatened to "erase him" (in Persian). The confrontation escalated with heated shouting before authorities intervened and forced the man to leave. The following day, Robert was approached by a group of four people (three males and one female) who walked up behind him, with one individual approaching him directly and threatening him face-to-face before punching and kicking him. This attacker explicitly told Robert that "the Islamic Republic will make him pay if he doesn't cancel the upcoming concert," again directly naming the Iranian regime as the entity threatening Robert's life.

47. In addition to these in-person confrontations, Robert disclosed to Ray Mirzabegian that he was receiving death threats through phone calls and had been repeatedly attacked by what he described as "Islamic republic terrorists during the tours." Following one confrontation, Robert was approached by an individual who threatened him with the specific words: "Who do you think you are? You made a big mistake. We are not going to allow a Fucking Christian, Dog Armenian promote anti-Islam shows and protests on stage, and the Islamic Republic of Iran will make him pay for his mistakes." This threat specifically targeted Robert's Christian Armenian identity and explicitly named the Islamic Republic of Iran as the entity that would "make him pay," establishing a direct connection between the threats and the Iranian regime.

48. In the weeks before his assassination, Ray Mirzabegian observed that Robert was "very nervous and panicked at all times" and "angry" about these threats, demonstrating the psychological impact of what he correctly perceived as credible threats to his life. When pressed for details about why he felt something bad would happen to him, Robert told Ray Mirzabegian that "the less I know the better" and that "he doesn't want me to get involved in anyway," indicating his awareness that the threats he faced were serious enough to potentially endanger those around him. Despite this fear and the escalating threats, Robert continued his anti-regime activities out of principle and his commitment to standing up for the people of Iran, particularly religious minorities who faced persecution.

## IV. Assassination of Robert Dehnoushi

49. On August 15, 2024, at approximately 8:00 AM, two assassins approached Robert Dehnoushi in a strip mall in Glendale, California, shot him in the head, killing him instantly, and fled the scene. This assassination occurred after Robert had explicitly expressed fears for his life to Ray Mirzabegian in the weeks prior, citing specific threats from individuals identifying themselves as representatives of the Islamic Republic who had warned that the regime would make him "pay for his mistakes" in organizing anti-regime concerts and publicly defying the Supreme Leader.

50. The nature of the attack—a targeted shooting carried out by multiple assailants who specifically targeted Robert Dehnoushi and immediately fled the scene—fulfilled the explicit threats Robert had received following confrontations with representatives of the Iranian regime. In the weeks before his murder, Robert had become "very nervous and panicked at all times" and "angry" about these threats, telling Ray Mirzabegian that individuals representing the Islamic Republic had specifically targeted him as a "Christian, Dog Armenian" who promoted "anti-Islam shows and protests on stage."

51. Following the assassination, photographs of Robert Dehnoushi's body were widely circulated, making headline news and causing additional trauma to his family.

## VI. Continued Threats and Harassment Following Assassination

52. Following Robert Dehnoushi's assassination, his family, including Plaintiff Stella Dehnoushi and their children, received threatening phone calls explicitly stating that "they had warned him" and that he "didn't listen." These statements directly corroborate that Robert's assassination was the fulfillment of the specific threats he had reported receiving from representatives of the Islamic Republic who had warned that the regime would make him "pay for his mistakes."

53. These callers further threatened that if any family member continued promoting anti-Islamic Republic activities or helping to organize concerts against the regime, they would meet the same fate as Robert Dehnoushi. The pattern of pre-assassination threats followed by post-assassination warnings demonstrates a continuous operation targeting not only Robert Dehnoushi but his entire family based on their opposition to the Iranian regime.

54. These threats have caused severe emotional distress and fear among the surviving family members, particularly given that Robert had concealed the full extent of the threats from his wife Stella to avoid causing her to "worry too much and live in fear." The assassination confirmed Robert's expressed fears that representatives of the Islamic Republic were targeting him specifically for his anti-regime activities and his identity as a Christian Armenian, whom his assailants had described in derogatory terms as a "Fucking Christian, Dog Armenian."

55. Additionally, the callers warned that other Iranian singers have been "put on notice" about what would happen to them if they continued activities similar to Robert Dehnoushi's anti-regime advocacy.

56. This pattern of threats following the assassination demonstrates the Iranian regime's intent to not only silence Robert Dehnoushi through his murder but to continue intimidating others who might speak out against the regime.

57. The ongoing threats against the Dehnoushi family constitute a continuing campaign of terror and intimidation orchestrated by the Iranian regime and carried out by its agents and proxies.

### FIRST CAUSE OF ACTION

### (Extrajudicial Killing -- Foreign Sovereign Immunities Act)

58. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59. The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, creates a federal cause of action against a foreign state that is or was a state sponsor of terrorism for personal injury or death caused by acts of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such acts.

60. Iran has been continuously designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 4605(j)) since January 19, 1984.

61. The assassination of Robert Dehnoushi on August 15, 2024, in Glendale, California was an extrajudicial killing as defined by the TVPA and actionable under the FSIA.

62. This killing was not authorized by a previous judgment of a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized peoples.

63. Instead, this killing was carried out summarily, without due process of law, as part of the Islamic Republic of Iran's systematic campaign to silence critics and opponents of the regime, even those residing outside Iran's borders.

64. The killing of Robert Dehnoushi was deliberate and was carried out by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

65. As close family members of a victim of an extrajudicial killing, Plaintiffs have standing to bring this action under the FSIA.

66. As a direct and proximate result of the extrajudicial killing of Robert Dehnoushi by Defendants, Plaintiffs have suffered severe mental anguish, bereavement, and loss of society, companionship, comfort, protection, and parental guidance.

67. The extrajudicial killing of Robert Dehnoushi by Defendants is actionable under 28 U.S.C. § 1605A.

## SECOND CAUSE OF ACTION

### (Terrorism -- Foreign Sovereign Immunities Act)

68. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69. The FSIA, 28 U.S.C. § 1605A, creates a federal cause of action against a foreign state that is or was a state sponsor of terrorism for personal injury or death caused by the provision of material support or resources for acts of terrorism.

70. The assassination of Robert Dehnoushi and the ongoing campaign of harassment, intimidation, and threats against his family described above constitute acts of international terrorism as defined by United States and international law.

71. These acts were intended to intimidate and coerce Robert Dehnoushi and his family, to retaliate against them for their anti-regime activities, and to suppress criticism of the Islamic Republic by demonstrating the regime's ability to reach its perceived enemies even within the United States.

72. The Islamic Republic of Iran, the IRGC, and MOIS provided material support and resources for these acts of terrorism, as evidenced by the specific threats Robert Dehnoushi received explicitly naming the "Islamic Republic of Iran" as the entity that would make him "pay for his mistakes." These threats followed confrontations with individuals identifying themselves as representatives of the Iranian regime who explicitly stated that "the Islamic republic considers him an enemy of Islam and a threat to the regime."

73. These acts of terrorism were carried out by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency, pursuant to the Iranian regime's explicitly stated intention to punish Robert Dehnoushi for his anti-regime activities and his identity as a Christian Armenian.

74. As a direct and proximate result of these acts of terrorism, Plaintiffs have suffered and continue to suffer severe psychological injuries, including post-traumatic stress disorder, ongoing fear, anxiety, and trauma.

75. The acts of terrorism directed against Robert Dehnoushi and his family by Defendants are actionable under 28 U.S.C. § 1605A.

## THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress -- Foreign Sovereign Immunities Act)

76. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77. The FSIA, 28 U.S.C. § 1605A, permits claims for intentional infliction of emotional distress against foreign states designated as state sponsors of terrorism.

78. The conduct of Defendants as described above was extreme and outrageous and exceeded all bounds of decency.

79. Such conduct was specifically intended to cause Plaintiffs severe emotional distress, and did in fact cause Plaintiffs severe emotional distress.

80. This conduct includes, but is not limited to:

   a. The assassination of Robert Dehnoushi;

   b. The circulation of photographs of his murdered body;

   c. The threatening phone calls to his family following the assassination; and

   d. The ongoing threats against Stella Dehnoushi and her children.

81. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiffs have suffered severe emotional distress manifesting in physical symptoms including sleep disturbances and other physical manifestations of psychological trauma.

82. The intentional infliction of emotional distress by Defendants is actionable under 28 U.S.C. § 1605A.

## FOURTH CAUSE OF ACTION

### (Assault and Battery -- Foreign Sovereign Immunities Act)

83. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84. The FSIA, 28 U.S.C. § 1605A, permits claims for assault and battery against foreign states designated as state sponsors of terrorism.

85. The physical attacks against Robert Dehnoushi described above, culminating in his assassination on August 15, 2024, constituted batteries upon him.

86. Additionally, Defendants' conduct created a reasonable apprehension of immediate harmful contact with Robert Dehnoushi's person, constituting assault.

87. The assaults and batteries against Robert Dehnoushi were carried out by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

88. As a direct and proximate result of these assaults and batteries, Robert Dehnoushi suffered physical injuries resulting in his death, and his estate is entitled to compensation for the pain, suffering, and loss of life he experienced.

89. The assaults and batteries committed against Robert Dehnoushi by Defendants are actionable under 28 U.S.C. § 1605A.

## FIFTH CAUSE OF ACTION

### (Civil Conspiracy -- Foreign Sovereign Immunities Act)

90. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91. Defendants and their officials, employees, and agents conspired, confederated, and agreed to commit the tortious acts described above against Robert Dehnoushi and his family members.

92. This conspiracy involved multiple individuals and entities acting in concert to carry out a coordinated campaign of persecution against Robert Dehnoushi and his family, ultimately resulting in his assassination.

93. In furtherance of this conspiracy, Defendants and their co-conspirators committed numerous overt acts, including but not limited to:

　　a. The physical attacks against Robert Dehnoushi prior to his assassination;

　　b. The assassination of Robert Dehnoushi;

　　c. The ongoing surveillance of Robert Dehnoushi and his family;

　　d. The threatening communications to the Dehnoushi family following the assassination; and

　　e. The continuous campaign of psychological intimidation directed at the surviving family members.

94. As a direct and proximate result of this conspiracy, Plaintiffs have suffered the injuries and damages described throughout this Complaint.

95. The civil conspiracy engaged in by Defendants is actionable under 28 U.S.C. § 1605A.

## PRAYER FOR RELIEF

96. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

A. Awarding Plaintiffs compensatory damages in an amount to be determined at trial, but not less than $100,000,000, for the psychological and emotional injuries they have suffered;

B. Awarding Plaintiffs compensatory damages for the extrajudicial killing of Robert Dehnoushi in an amount to be determined at trial, but not less than $100,000,000;

C. Awarding Plaintiffs economic damages for therapy costs, lost earning capacity, and other financial losses in an amount to be determined at trial, but not less than $10,000,000;

D. Awarding Plaintiffs punitive damages in an amount to be determined at trial, but not less than $500,000,000, that is sufficient to punish Defendants for their outrageous conduct and to deter them and others from similar conduct in the future;

E. Awarding Plaintiffs prejudgment and post-judgment interest;

F. Awarding Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

G. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated: _____, 2025

       Respectfully submitted,


                    _____
                    Jeffrey D. Katz, Attorney for Plaintiff
                    _____
                    Jared B. Stape, Attorney for Plaintiffs
                    Jeffrey D. Katz Bar#17071
                    JDKatz, P.C.
                    4800 Montgomery Avenue, Suite 600
                    Bethesda, MD 20814
                    Phone: (240) 743-5408
                    Email: Jeffrey@JDKatz.com

## VERIFICATION

I, STELLA DEHNOUSHI, declare under penalty of perjury under the laws of the United States

of America that the foregoing facts are true and correct to the best of my knowledge, information,

and belief.

STELLA DEHNOUSHI

Date: 6/26/25